**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| WESLEY HOLDINGS LTD., | Civil Docket No.: _17-CV-3362_ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | (JURY TRIAL DEMANDED) |
| 3SI SYSTEMS, LLC, SURGICAL SAFETY SOLUTIONS, LLC, DOWNING HEALTH TECHNOLOGIES, LLC, DOWNING INVESTMENT PARTNERS, LP, DOWNING PARTNERS, LLC, HANNOVER SQUARE CAPITAL PARTNERS, LP, CLINIFLOW TECHNOLOGIES, LLC, and DAVID W. WAGNER, | |
| Defendants. | |

Now comes Plaintiff Wesley Holdings Ltd., by counsel, and respectfully states the following as its Complaint in this matter:

## STATEMENT OF THE CASE

1.      This case arises under the same facts and circumstances as one already pending before the Court in the case captioned *Hilderbrand, et al. v. Downing Investment Partners, LP, et al.*, Case No. 16-cv-04040 (the "**Fraud Litigation**"). Both cases assert claims arising from the Ponzi-like fraud scheme being perpetrated by defendant David W. Wagner ("**Wagner**") through a system of corporate shell entities including defendants 3si Systems, LLC ("**3si Systems**") and CliniFlow Technologies, LLC ("**CliniFlow**").

2.      Plaintiff Wesley Holdings Ltd. ("**Wesley Holdings**") is a first-priority secured creditor with a valid lien on substantially all of the assets of 3si Systems (the "**Collateral**"). The Collateral includes all of the intellectual property, patents and hardware for the operation of hospital operating room voice command systems. This is 3si Systems' primary product.

3.     Wesley Holdings made a $1.25 million loan to 3si Systems based on fraudulent financials and misrepresentations submitted to Wesley Holdings by Wagner and 3si Systems while Wesley Holdings was performing its due diligence for the loan.   Among other misrepresentations, Wagner and 3si Systems represented that the loan proceeds were supposed to be used to develop 3si Systems' medical technology business.

4.     Instead, Wagner almost immediately withdrew most of the loan funds and used them to repay prior 3si Systems investors who had sued Wagner or 3si Systems, or were threatening to sue Wagner or 3si Systems. Then, just one month after the loan closed, Wagner transferred 3si Systems and its assets into newly-formed CliniFlow, where Wagner continues to actively solicit new investors and apply for millions of dollars in bond debt.

5.     As a result of Wagner's fraudulent activities, the loan is in default and Wesley Holdings is exercising its rights as a secured creditor under the loan documents and applicable law.  Wesley Holdings will be filing a motion for the appointment of a receiver to prevent further dissipation of its Collateral.

## PARTIES

6.     Plaintiff Wesley Holdings Ltd. ("**Wesley Holdings**") is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business at 30100 Chagrin Blvd., Suite 301, Pepper Pike, Ohio 44124.

7.     Upon information and belief, Defendant 3si Systems, LLC ("**3si Systems**") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 590 Madison Avenue, 14th Floor, New York, New York 10022. Upon information and belief, Defendants Surgical Safety Solutions, LLC, Surgical Safety Solutions Interactive LLC, Downing Medical Device Group, LLC and Downing Health

Technologies, LLC (each identified below) were consolidated into 3si Systems and, as such, 3si Systems is the successor-in-interest to the aforementioned entities.  3si Systems may be served with process at Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19801.

8.      Upon information and belief, Defendant Surgical Safety Solutions, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 590 Madison Avenue, 14th Floor, New York, New York 10022. Surgical Safety Solutions, LLC may be served with process at Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19801.

9.      Upon information and belief, Defendant Downing Health Technologies, LLC, f/k/a Downing Digital Healthcare Group, LLC, is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 590 Madison Avenue, 14th Floor, New York, New York 10022.  Downing Health Technologies, LLC may be served with process at Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19801.

10.     Upon information and belief, Downing Investment Partners, LP is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business at 590 Madison Avenue, 14th Floor, New York, New York 10022.  Downing Investment Partners, LP may be served with process at Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19801.

11.     Upon information and belief, Defendant Downing Partners, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 590 Madison Avenue, 14th Floor, New York, New York 10022.

Downing Partners, LLC may be served with process at Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19801.

12.     Upon information and belief, Defendant Hannover Square Capital Partners, LP is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business at 85 Seymour Street, Suite 607, Hartford, Connecticut 06106. Hannover Square Capital Partners, LP may be served with process at BH Registered Agents, LLC, 1105 N. Market Street, 11th Floor, Wilmington, Delaware 19801.

13.     Upon information and belief, Defendant CliniFlow Technologies, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 85 Seymour Street, Suite 607, Hartford, Connecticut 06106. CliniFlow Technologies, LLC may be served with process at BH Registered Agents, LLC, 1105 N. Market Street, 11th Floor, Wilmington, Delaware 19801.

14.     Upon information and belief, Defendant David W. Wagner is an individual and citizen of the State of Rhode Island.   Wagner is the Chairman and Managing Partner of Defendant Downing Partners, LLC and the Chairman or Chief Executive Officer of Defendants Downing Investment Partners, LP, Downing Health Technologies, LLC, Surgical Safety Solutions, LLC, 3si Systems, LLC, Hannover Square Capital Partners, LP, and CliniFlow Technologies, LLC.   David W. Wagner may be served with process at 590 Madison Avenue, 14th Floor, New York, New York 10022 or 85 Seymour Street, Suite 607, Hartford, Connecticut 06106.

15.     Defendants 3si Systems, LLC, Surgical Safety Solutions, LLC, Downing Health Technologies, LLC, Downing Investment Partners, LP, Downing Partners, LLC, Hannover

Square Capital Partners, LP, CliniFlow Technologies, LLC, and David W. Wagner together are referred to herein as "**Defendants**."

<u>JURISDICTION AND VENUE</u>

16.    This Court has federal diversity jurisdiction over Wesley Holdings' claims pursuant to 28 U.S.C. § 1332.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

17.    The Court has personal jurisdiction over Defendants located in New York pursuant to CPLR § 301 because those Defendants reside in New York or have a principal place of business in New York.  The Court has personal jurisdiction over Defendants that are not located in New York pursuant to CPLR § 302(a)(1) because those Defendants transacted business in New York from which this action arises.

<u>FACTS COMMON TO ALL COUNTS</u>

A.    **The 3si Systems Loan Transaction.**

18.    3si Systems is a medical technology start-up company controlled by Wagner.  3si Systems owns 83% of the ownership interest in subsidiary Surgical Safety Solutions, LLC ("**Surgical Safety**").  The Collateral patents are held by Surgical Safety, and 3si Systems has the exclusive right to license products generated from the Collateral pursuant to a certain Distributor Agreement dated December 23, 2014.

19.    In early 2016, 3si Systems approached Wesley Holdings about making a loan to 3si Systems.  While conducting due diligence for the potential loan, Wesley Holdings requested copies of 3si Systems' most recent financial statements.  Wagner prepared and provided financial

statements for 3si Systems' predecessor, defendant Downing Health Technologies, LLC,[1] and its Surgical Safety subsidiary, both of which were sent to Wesley Holdings by a 3si Systems representative.  A true and correct copy of those financials is attached hereto as Exhibit A and is incorporated by reference.

20.     During due diligence, Wesley Holdings specifically asked whether 3si Systems had any other secured debt and whether 3si Systems was paying or accruing management fees. Wesley Holdings informed 3si Systems that it would not make a loan if 3si Systems had other secured debt, if Wagner received management fees while 3si Systems was not generating a positive cash flow, or if 3si Systems used the proceeds of the loan for anything other than developing and commercializing 3si Systems' business.

21.     In response to 3si Systems' diligence inquiries, 3si Systems made the following representations to Wesley Holdings (collectively, the "**Fraudulent Misrepresentations**"): (i) 3si Systems and Surgical Safety had no secured debt on their balance sheets; (ii) 3si Systems would not pay Wagner any management or similar fees until 3si Systems was generating a positive cash flow; and (iii) loan proceeds would be used for developing and commercializing 3si Systems' business, including software development, installation of 3si Systems products, and legitimate general operating expenses.

22.     Wesley Holdings loaned 3si Systems $1.25 million (the "**Loan**") in reliance on the Fraudulent Misrepresentations.

23.     On or about May 13, 2016, 3si Systems and Wesley Holdings entered into a certain *Secured Promissory Note & Warrant Purchase Agreement* (the "**Loan Agreement**") that outlined the terms of the transaction between Wesley Holdings and 3si Systems.  The transaction

---

[1] Shortly before forming 3si Systems, Wagner had moved the assets of what is now 3si Systems between several different predecessor entities, including Downing Health Technologies, LLC and Downing Digital Healthcare

described the terms of the Loan and established a structure for Wesley Holdings to make additional loans secured by an interest in 3si Systems' future customer accounts receivable. A true and correct copy of the Loan Agreement is attached hereto as <u>Exhibit B</u> and is incorporated by reference.

24.     In connection with the Loan Agreement, on or about May 13, 2016, 3si Systems executed and delivered to Wesley Holdings a certain *Secured Promissory Note* (the "**Note**") pursuant to which Wesley Holdings loaned 3si Systems the principal sum of $1,250,000.00. A true and correct copy of the Note is attached hereto as <u>Exhibit C</u> and is incorporated herein by reference.

25.     In connection with the Loan Agreement, on or about May 13, 2016, 3si Systems executed and delivered to Wesley Holdings a certain *Security Agreement* (the "**Security Agreement**") pursuant to which 3si Systems granted Wesley Holdings a security interest and lien in the Collateral to secure the performance of the obligations due under the Note. A true and correct copy of the Security Agreement is attached hereto as <u>Exhibit D</u> and is incorporated by reference.

26.     Pursuant to the Security Agreement, Wesley Holdings had the right to record financing statements with the appropriate entities to perfect its security interests. Wesley Holdings properly perfected its interest in the Collateral by filing Financing Statement No. 20170189057 with the Delaware Secretary of State (the "**Financing Statement**"). A true and correct copy of the Financing Statement is attached hereto as <u>Exhibit E</u> and is incorporated by reference.

---

Group, LLC, all of which were controlled by Wagner.

27.     By virtue of the Financing Statement, Wesley Holdings holds a valid, duly perfected lien on the Collateral, which lien is prior and superior to all other liens, claims, interests, or encumbrances whatsoever on the Collateral.

28.     The Loan Agreement, Note, Security Agreement, Financing Statement and other documents relating thereto, all as may be or have been amended, revised, restated, supplemented, or otherwise modified from time to time, are herein referred to as the "**Loan Documents**."

**B.     The Fraudulent Misrepresentations Are False and Wagner Fraudulently Transferred the Collateral to Newly-Formed, Wagner-Controlled Entity CliniFlow In Violation of the Loan Documents and Application Law.**

29.     3si Systems did not use the Loan funds to develop and commercialize 3si Systems' business.  Instead, almost immediately upon receiving the Loan funds, and in direct contravention of the representations made by Wagner and 3si Systems during Wesley Holdings' due diligence for the Loan, Wagner withdrew most of the Loan funds and used them to enrich himself and to repay prior 3si Systems investors who had sued Wagner or 3si Systems, or were threatening to sue Wagner or 3si Systems, so he could perpetuate a Ponzi-like fraud scheme. This was in violation of the Loan Documents and directly contrary to the Fraudulent Misrepresentations made by Wagner and 3si Systems during Wesley Holdings' due diligence for the Loan.

30.     The fraud scheme worked, in essence, as follows: Wagner recruited employee-investors for 3si Systems based on representations that employees would be paid certain salary, commission, bonus, expenses and health benefits in exchange for selling products developed by 3si Systems.  While recruiting, Wagner represented that 3si Systems' products were fully-developed and ready to sell.  As a condition to employment, each employee was required to invest a minimum of $250,000 in 3si Systems.  However, because 3si Systems had no cash flow, 3si Systems could not pay its employees when it recruited those employees and solicited their

investments.  Wagner used the investments from new employee-investors to pay old employee-investors and stopped paying new employee-investors their promised salary and benefits shortly after they started working for 3si Systems.  Employees also learned that, contrary to Wagner's representations, 3si Systems did not have commercialized products they could sell to earn commissions.

31.     Upon information and belief, Wagner has also been paying himself management fees while 3si Systems has no legitimate income and no positive cash flow.   Wagner has also been secretly accruing millions of dollars in management fees and claims those fees are secured debt that would come ahead of other creditors.  This was in violation of the Loan Documents and directly contrary to the Fraudulent Misrepresentations made by Wagner and 3si Systems during Wesley Holdings' due diligence for the Loan.

32.     In addition, on or around June 24, 2016—only a month after closing the Loan and receiving $1.25 million from Wesley Holdings—Wagner transferred 3si Systems and its assets to CliniFlow in a complex series of transactions between Wagner's various corporate shell entities. CliniFlow is actively soliciting new investors based on the value of the Collateral, soliciting new contracts that can only be fulfilled using the Collateral, and seeking millions of dollars in public bond debt that will fraudulently interpose a layer of lenders' liens on the Collateral.  All of these fraudulent actions are in violation of the Loan Documents and cause harm to Wesley Holdings and its interest in the Collateral.

33.     Wagner also recently attempted to transfer 3si Systems' prototype equipment to CliniFlow in violation of a preliminary injunction issued in the Fraud Litigation.  Three months ago, Wagner demanded that a 3si Systems employee, Michael Grumbine, transfer valuable 3si Systems prototype equipment to Wagner, and Wagner threatened to sue Mr. Grumbine if Mr.

Grumbine did not turn over the equipment.  Upon information and belief, to date, Mr. Grumbine has not turned over the equipment.  Upon further information and belief, Wagner is planning to use 3si Systems' prototype equipment to generate contracts with third-party medical service providers for the benefit of CliniFlow, when the equipment and any related contracts should be used for the exclusive benefit of 3si Systems.

**C.    As a Result of Wagner's Fraudulent Conduct and 3si Systems' Breach of the Loan Documents, Wesley Holdings Is Entitled to Enforce Its First Priority Lien and Security Interest in the Collateral.**

34.    As a result of the fraudulent misrepresentations and misconduct described above, 3si Systems is in default under the terms and conditions of the Loan Documents.

35.    3si Systems is in default of Section 4(e) of the Note (the "**Note Default**") for failing to observe and perform the obligations to be observed or performed under the Loan Documents.

36.    3si Systems is in breach of at least the following representations and warranties it made in the Loan Agreement:

a)    3si Systems did not accurately disclose threatened or pending legal proceedings that might materially impair 3si Systems' ability to do business (Section 2(f));

b)    3si Systems provided Wesley Holdings with fraudulent financial statements that did not fairly present in all material respects the financial conditions of 3si Systems and affiliates (Section 2(g));

c)    3si Systems did not accurately disclose its liabilities (Section 2(h));

d)    3i Systems did not accurately disclose all events and developments that could reasonably be expected to have a material adverse effect on 3si Systems or Wesley Holdings, including failing to disclose that Wagner had formed new entities Hannover Square Capital Partners, LP and CliniFlow Technologies, LLC and was planning to transfer 3si Systems and the Collateral to CliniFlow (Section 2(i)); and

e)    3si Systems did not accurately disclose all related party transactions (Section 2(m)).

3si Systems is also in breach of Section 5 of the Loan Agreement for willfully avoiding or seeking to avoid the observance of any performance of any of the terms of the Note or related Loan Documents and failing in good faith to take such action as may be necessary to protect the rights of Wesley Holdings against wrongful impairment.  Each of these defaults under the Loan Agreement (the "**Loan Agreement Defaults**") triggers the cross-default provisions of Section 4(e) of the Note.

37.     3si Systems is in default of the Security Agreement under at least the following default provisions:

a)     3si Systems defaulted on the performance of the terms, covenants and conditions of the Security Agreement (Section 3(b));

b)     3si Systems failed to remove or adequately bond multiple charging liens or charges upon the Collateral, including the attachment proceedings pending in the Fraud Litigation and the charging lien pending in the litigation brought by former employee Ken Stephens in Texas and Massachusetts (Sections 3(c) and (d)); and

c)     3si Systems made certifications, representations and warranties in the Loan Documents that were untrue or misleading in material respects when made, including misrepresenting the intended use of the Loan proceeds and failing to disclose that Wagner had formed new entities Hannover Square Capital Partners, LP and CliniFlow Technologies, LLC and was planning to transfer 3si Systems and the Collateral to CliniFlow (Section 3(f)).

3si Systems is also in default of Section 2.3 of the Security Agreement for failing to keep accurate and complete books and records of the Collateral.  Each of these defaults under the Security Agreement (the "**Security Agreement Defaults**," and together with the Note Default and the Loan Agreement Defaults, the "**Designated Defaults**") triggers the cross-default provisions of Section 4(e) of the Note.

38.     The Designated Defaults are continuing, have not been cured and cannot be cured because they are based on ongoing fraudulent conduct perpetrated by Wagner.

39.     Wesley Holdings sent 3si Systems a notice of default on May 3, 2017.  A true and correct copy of the notice of default letter is attached hereto to as <u>Exhibit F.</u>

40.     As a result of 3si Systems' defaults, Wesley Holdings is entitled to recover its collection costs and attorneys' fees under at least Section 4(a) of the Loan Agreement.

41.     As a result of the Designated Defaults, 3si Systems owes Wesley Holdings at least $1,448,482.78 as of May 3, 2017, inclusive of outstanding principal, accrued but unpaid interest, and fees, plus interest accruing from and after such date at the interest rate of 14% per annum, plus collection costs and attorneys' fees accruing from and after such date.

**D.     Wesley Holdings Is Entitled to Foreclose On and Take Possession of the Collateral.**

42.     As a result of 3si Systems' defaults under the Loan Documents, Wesley Holdings is entitled to exercise its rights under the Loan Documents and the Uniform Commercial Code, including foreclosing upon and taking possession of the Collateral.

43.     Wagner has transferred, or attempted to transfer, 3si Systems and its assets to one or more of the Defendants, including CliniFlow.

44.     The Defendants, including CliniFlow, are, or may be, in possession of the Collateral.

**COUNT ONE**
***(Breach of Note – 3si Systems)***

45.     Wesley Holdings incorporates by reference the allegations and averments of Paragraphs 1 through 44 of the Complaint as if fully set forth herein.

46.     The Note constitutes a contract of indebtedness between 3si Systems, as borrower, and Wesley Holdings, as lender.

47.     Wesley Holdings performed its obligations evidenced by the Note and Loan Documents.

48.     3si Systems defaulted under its obligations evidenced by the Note and Loan Documents by virtue of the Designated Defaults.  The Designated Defaults continue, have not been cured, and cannot be cured.

49.     All conditions precedent to the enforcement of the Note have been satisfied.

50.     Pursuant to the terms and conditions of the Note, upon the occurrence and continuation of an event of default, Wesley Holdings has the right to accelerate the indebtedness evidenced by the Note and to declare all amounts due under the Note due and owing.  Wesley Holdings is exercising such remedy due to the occurrence of the Designated Defaults.

51.     Pursuant to the terms and conditions of the Note, upon the occurrence and continuation of an event of default, Wesley Holdings has the right to charge, and 3si Systems has agreed to pay, interest accruing at a default rate of interest equal to the lesser of (a) fourteen percent (14%) per annum or (b) the maximum interest rate allowed by law.  Due to the occurrence of the Designated Defaults, default interest is due and owing on the Note.

52.     Pursuant to the terms of the Loan Documents, as a result of 3si Systems' defaults, Wesley Holdings is entitled to recover its collection costs and attorneys' fees under at least Section 4(a) of the Loan Agreement.

53.     By virtue of the defaults hereunder, there is due and owing to Wesley Holdings from 3si Systems on the Note at least $1,448,482.78 as of May 3, 2017, inclusive of outstanding principal, accrued but unpaid interest, fees and collection costs and attorneys' fees, plus interest accruing from and after such date at the interest rate of 14% per annum, plus collection costs and attorneys' fees accruing from and after such date.

**COUNT TWO**
*(Foreclosure of Security Interest – All Defendants)*

54.    Wesley Holdings incorporates all of the allegations in paragraphs 1 through 53 as if fully set forth herein.

55.    The Security Agreement grants Wesley Holdings a security interest in the Collateral.

56.    Wesley Holdings has a duly perfected, first priority security interest in the Collateral by virtue of filing the Financing Statement with the Delaware Secretary of State.

57.    Upon information and belief, the Defendants are in possession of some or all of the Collateral and have not remitted the Collateral to Wesley Holdings.

58.    Due to the Designated Defaults, the conditions of the Security Agreement have been broken.  Accordingly, pursuant to the terms of the Security Agreement and Del. Code Ann. tit. 6, §§ 9-101, *et seq.*, Wesley Holdings is entitled to enforcement of the terms of the Security Agreement and the immediate possession and/or sale of the Collateral, with the proceeds therefrom applied in payment of Wesley Holdings' claims and liens.

**COUNT THREE**
*(Fraud – All Defendants)*

59.    Wesley Holdings incorporates all of the allegations in paragraphs 1 through 58 as if fully set forth herein.

60.    While Wesley Holdings was conducting its due diligence for the Loan, Wagner and 3si Systems prepared and provided financial statements for 3si Systems and Surgical Safety to Wesley Holdings.  Those financial statements were false and were known by Wagner and 3si Systems to be false when they were prepared and presented to Wesley Holdings.

61.    In response to 3si Systems' diligence inquiries, 3si Systems made the following Fraudulent Misrepresentations: (i) 3si Systems and Surgical Safety had no secured debt on their

balance sheets; (ii) 3si Systems would not pay Wagner any management or similar fees until 3si Systems was generating a positive cash flow; and (iii) loan proceeds would be used for developing and commercializing 3si Systems' business, including software development, installation of 3si Systems products, and legitimate general operating expenses. The Fraudulent Misrepresentations were false and were known by Wagner and 3si Systems to be false when they were made to Wesley Holdings.

62.     Wagner and 3si Systems intended Wesley Holdings to rely on the Fraudulent Misrepresentations when Wesley Holdings was deciding whether to make the Loan to 3si Systems.

63.     Wesley Holdings reasonably and justifiably relied on the Fraudulent Misrepresentations made by Wagner when it agreed to make the Loan to 3si Systems.

64.     Almost immediately upon receiving the Loan funds, Wagner withdrew most of the Loan funds and used them to repay prior 3si Systems investors who had sued Wagner or 3si Systems, or were threatening to sue Wagner or 3si Systems, so he could perpetuate his fraud scheme. This was in violation of the Loan Documents and directly contrary to the Fraudulent Misrepresentations made by Wagner and 3si Systems during Wesley Holdings' due diligence for the Loan.

65.     In violation of the Loan Documents and applicable law, Wagner transferred 3si Systems and its assets to CliniFlow in a complex series of transactions between Wagner's various corporate shell entities. CliniFlow is actively soliciting new investors based on the value of the Collateral, soliciting new contracts that can only be fulfilled using the Collateral, and seeking millions of dollars in public bond debt that will fraudulently interpose a layer of lender liens on the Collateral. All of these fraudulent actions are in violation of the Loan Documents,

directly contrary to the Fraudulent Misrepresentations made by Wagner and 3si Systems, and cause harm to Wesley Holdings and its interest in the Collateral.

66.    By virtue of the Fraudulent Misrepresentations and Wagner's fraudulent actions, Wesley Holdings has been injured in an amount not less than $1,448,482.78, plus compensatory, punitive, and other damages, with the exact amount to be determined at trial.

**WHEREFORE**, Plaintiff Wesley Holdings Ltd. prays for judgment as follows:

a) On Count One, that final judgment be entered in favor of Wesley Holdings and against 3si Systems on the Note in the amount of $1,448,482.78, inclusive of outstanding principal, accrued but unpaid interest, fees and collection costs and attorneys' fees, plus interest accruing from and after such date at the interest rate of 14% per annum, plus collection costs and attorneys' fees accruing from and after such date; and

b) On Count Two, that Wesley Holdings' security interest in the Collateral be declared a valid, duly perfected, first-priority lien upon the Collateral; and

c) On Count Three, that final judgment be entered in favor of Wesley Holdings and against the Defendants, jointly and severally, in an amount of damages not less than $1,448,482.78, plus compensatory, punitive, and other damages, with an exact amount to be determined at trial; and

d) That all liens be marshaled and that any party be required to set forth any claim, lien or interest in or upon the Collateral, which he, she or it may have or be forever barred therefore; and

e) That a receiver be appointed to take possession and control of the Collateral, to manage and operate the Collateral for the benefit of Wesley Holdings and 3si Systems' other legitimate creditors, to assist in and conduct any sale of the Collateral, and to take all other actions permitted under the terms of the Security Agreement and by law; and

f) That upon a sale of the Collateral, the proceeds of such sale be paid to Wesley Holdings to satisfy the amount of the existing liens, interest, and disbursements related to the Collateral, together with all costs hereby expended, including without limitation all attorney fees and costs incurred by Wesley Holdings to collect outstanding amounts; and

g) For such other and further relief to which Wesley Holdings may be entitled at equity or at law.

Date:   May 5, 2017
   New York, New York

By: *s/Keith R. Murphy*      
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Samuel M. Light
Email: slight@bakerlaw.com

*Attorneys for Wesley Holdings Ltd.*

*Of Counsel:*

BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone:  (216) 621-0200
Facsimile:  (216) 696-0740
Matthew R. Goldman
Email: mgoldman@bakerlaw.com
Michael A. VanNiel
Email: mvanniel@bakerlaw.com
Alexis C. Beachdell
Email: abeachdell@bakerlaw.com