UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WESLEY HOLDINGS LTD.,<br><br>      Plaintiff,<br><br>v.<br><br>3SI SYSTEMS, LLC, SURGICAL SAFETY SOLUTIONS, LLC, DOWNING HEALTH TECHNOLOGIES, LLC, DOWNING INVESTMENT PARTNERS, LP, DOWNING PARTNERS, LLC, HANNOVER SQUARE CAPITAL PARTNERS, LP, CLINIFLOW TECHNOLOGIES, LLC, and DAVID W. WAGNER,<br><br>      Defendants. | Case No. 1:17-cv-3362-UA |

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION FOR THE APPOINTMENT OF A RECEIVER

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200

*Attorneys for Plaintiff*
*Wesley Holdings Ltd.*

This case arises under the same facts and circumstances as one already pending before the Court in the case captioned *Hilderbrand, et al. v. Downing Investment Partners, LP, et al.*, Case No. 16-cv-04040 (the "**Fraud Litigation**"). Both cases assert claims arising from the Ponzi-like fraud scheme being perpetrated by defendant David W. Wagner ("**Wagner**") through a system of corporate shell entities including defendants 3si Systems, LLC ("**3si Systems**") and CliniFlow Technologies, LLC ("**CliniFlow**").

Plaintiff Wesley Holdings Ltd. ("**Wesley Holdings**") is a secured creditor of 3si Systems. Wesley Holdings recently learned that it made its loan to 3si Systems based on fraudulent financial information provided by 3si Systems. The loan is in default, and Wesley Holdings is entitled to collect on its collateral, which includes substantially all of the assets of 3si Systems.

Wesley Holdings also recently learned that Wagner transferred 3si Systems' assets to the newly-formed, Wagner-controlled entity CliniFlow. CliniFlow is treating the assets of 3si Systems as a "business unit" of CliniFlow, is using 3si Systems' assets to solicit millions of dollars of investment in CliniFlow, and is causing CliniFlow to incur millions of dollars in public bond debt that will interpose new lender liens on 3si Systems' assets.

Finally, Wesley Holdings recently learned that Wagner is transferring 3si Systems' assets and causing CliniFlow to incur substantial debt in violation of the preliminary injunction this Court issued in the Fraud Litigation. The plaintiffs in the Fraud Litigation are pursuing attachment proceedings as a result of Defendants' violation of that preliminary injunction.

Accordingly, Wesley Holdings requests the appointment of a receiver pursuant to Rule 66 of the Federal Rules of Civil Procedure to stop Wagner's continued transfer of 3si Systems' assets to CliniFlow, stop Wagner from incurring new bond debt through CliniFlow, and preserve the collateral securing Wesley Holdings' fraudulently induced loan.

The evidence in support of this Motion is set forth in the Declaration of Michael H. Shaut ("**Shaut Decl.**"), the Declaration of Joseph O. Wesley ("**Wesley Decl.**"), and the Declaration of Keith R. Murphy. In further support of this Motion, Wesley Holdings states as follows.

## SUMMARY OF THE ARGUMENT

Wesley Holdings is a first-priority, senior secured creditor with a valid lien on substantially all of the assets of 3si Systems (the "**Collateral**"). The Collateral includes all of the intellectual property, patents and hardware for the operation of hospital operating room voice command systems. This is 3si Systems' primary product.

Wagner fraudulently induced Wesley Holdings to make a loan to 3si Systems based on fraudulent financials and misrepresentations submitted to Wesley Holdings while it was performing its due diligence. The loan Wesley Holdings made to 3si Systems is in default, and Wesley Holdings is entitled to foreclose on its Collateral.

Wesley Holdings requests the appointment of a receiver to protect its Collateral because Wagner is siphoning 3si Systems' assets for his own benefit through a series of corporate shell entities and is using 3si Systems and its affiliates to run a Ponzi-like fraud scheme. Wagner has already transferred substantial valuable assets from 3si Systems to frustrate defrauded creditors—including Wesley Holdings. A receiver needs to be appointed to stop the further dissipation of 3si Systems' assets, recover already fraudulently transferred assets, and ensure that the value of 3si Systems' assets is maximized for the benefit of Wesley Holdings and 3si Systems' numerous defrauded creditors.

# I. RELEVANT FACTS

**A.  3si Systems is a Medical Technology Start-Up Company with Valuable Intellectual Property Assets.**

3si Systems is a medical technology start-up company controlled by Wagner. 3si Systems owns 83% of the ownership interest in its subsidiary, Surgical Safety Solutions, LLC ("**Surgical Safety**").

The Collateral patents are held by Surgical Safety, and 3si Systems has the exclusive right to license products generated from the Collateral pursuant to a certain Distributor Agreement dated December 23, 2014.

3si Systems' success as a start-up company is dependent on its ability to properly develop its patented technology and translate its technology into service contracts with third-party medical providers. A key aspect of developing 3si Systems' valuable intellectual property is properly registering and maintaining its patents and expanding its existing patents to include new uses within the necessary time frame. (Shaut Decl. ¶ 3.)

**B.  Wagner's Fraudulent Misrepresentations.**

In early 2016, 3si Systems approached Wesley Holdings about making a loan to 3si Systems. While conducting due diligence for the potential loan, Wesley Holdings requested copies of 3si Systems' most recent financial statements. Wagner prepared and provided financial statements for 3si Systems' predecessor, Downing Health Technologies, LLC,[1] and its Surgical Safety subsidiary, both of which were sent to Wesley Holdings by a 3si Systems representative. (Shaut Decl. ¶ 4.) Copies of those financial statements are attached to the Shaut Decl. as Exhibit 1.

---

[1] Shortly before forming 3si Systems, Wagner had moved the assets of what is now 3si Systems between several different predecessor entities, including Downing Health Technologies, LLC and Downing Digital Healthcare Group, LLC, all of which were controlled by Wagner. (Shaut Decl. ¶ 10.)

During due diligence, Wesley Holdings specifically asked whether 3si Systems had any other secured debt and whether 3si Systems was paying or accruing management fees. Wesley Holdings informed 3si Systems that it would not make a loan if 3si Systems had other secured debt, if Wagner received management fees while 3si Systems was not generating a positive cash flow, or if 3si Systems used the proceeds of the loan for anything other than developing and commercializing 3si Systems' business. (Shaut Decl. ¶ 5.)

In response to 3si Systems' diligence inquiries, 3si Systems made the following representations to Wesley Holdings (collectively, the "**Fraudulent Misrepresentations**"):

a) 3si Systems and Surgical Safety had no secured debt on their balance sheets (Shaut Decl. ¶ 6.);

b) 3si Systems would not pay Wagner any management or similar fees until 3si Systems was generating a positive cash flow, based on Wagner's representations stating the same (Shaut Decl. ¶ 6.); and

c) loan proceeds would be used for developing and commercializing 3si Systems' business, including software development, installation of 3si Systems products, and legitimate general operating expenses, based on Wagner's representations stating the same (Shaut Decl. ¶ 6.).

On or about May 13, 2016, Wesley Holdings loaned 3si Systems $1.25 million (the "**Loan**") in reliance on the Fraudulent Misrepresentations. (Wesley Decl. ¶¶ 2-5; Shaut Decl. ¶ 7.) *See* (i) the May 13, 2016 *Secured Promissory Note & Warrant Purchase Agreement* (the "**Loan Agreement**"), attached to the Wesley Decl. as Exhibit 1; (ii) the May 13, 2016 *Secured Promissory Note* (the "**Note**") in the original principal amount of $1,250,000.00, attached to the Wesley Decl. as Exhibit 2; (iii), the May 13, 2016 *Security Agreement* (the "**Security Agreement**") granting Wesley Holdings a security interest and lien on the Collateral attached to the Wesley Decl. as Exhibit 3.

Wesley Holdings properly perfected its security interest in the Collateral by filing Financing Statement No. 20170189057 with the Delaware Secretary of State (the "**Financing**

**Statement**," and together with the Loan Agreement, Note, Security Agreement, and other documents relating thereto, all as may be or have been amended or restated from time to time, the "**Loan Documents**." ). (Wesley Decl. ¶ 6.) A copy of the Financing Statement is attached to the Wesley Decl. as Exhibit 4.

By virtue of the Loan Documents, Wesley Holdings holds a valid, duly perfected lien on the Collateral, which lien is prior and superior to all other liens, claims, interests, or encumbrances. (Wesley Decl. ¶ 7.)

**C.      Wagner's Fraudulent Conduct.**

3si Systems did not use the Loan funds to develop and commercialize 3si Systems' business. Instead, almost immediately upon receiving the Loan funds, Wagner withdrew most of the Loan funds and used them to repay prior 3si Systems investors who had sued Wagner or 3si Systems, or were threatening to sue Wagner or 3si Systems, so he could perpetuate his fraud scheme. (Shaut Decl. ¶ 8.) This is a violation of the Loan Documents and is directly contrary to the Fraudulent Misrepresentations made by Wagner and 3si Systems during Wesley Holdings' due diligence for the Loan.

In addition, upon information and belief Wagner has been paying himself management fees while 3si Systems has no legitimate income and no positive cash flow. Wagner has also been secretly accruing millions of dollars in management fees and claims those fees are secured debt that would come ahead of other creditors. (Shaut Decl. ¶ 9.) This is a violation of the Loan Documents and is directly contrary to Fraudulent Misrepresentations made by Wagner and 3si Systems during Wesley Holdings' due diligence for the Loan.

**D.    In Violation of the Loan Documents and Applicable Law, Just One Month After Closing the Loan, Wagner Fraudulently Transferred the Collateral to CliniFlow.**

Wagner controls 3si Systems through a series of corporate shell entities. Until recently, 3si Systems was owned by Downing Investment Partners, LP ("**DILP**"), which was in turn owned by Downing Partners, LLC. Wagner is the majority equity holder of these Downing entities and controls both Downing entities. (Shaut Decl. ¶ 11.)

On or around June 24, 2016—only a month after closing the Loan and receiving $1.25 million from Wesley Holdings—Wagner caused DILP to dividend all of the equity in 3si Systems to DILP's limited partners, including a majority distribution to Wagner. (Shaut Decl. ¶ 12.) A copy of the letter describing this transaction is attached to the Shaut Decl. as Exhibit 2.

Wagner, in turn, transferred 3si Systems and its assets into a newly-formed, Wagner-controlled entity named Hannover Square Capital Partners, LP, which contributed 3si Systems to newly-formed CliniFlow. Wagner is the founder and executive chairman of CliniFlow. As part of that transfer, Wagner moved 3si Systems' assets from New York to Hartford, Connecticut. (Shaut Decl. ¶ 13.)

Wagner markets CliniFlow as a holding company that acquires and invests in a portfolio of medical technology companies. CliniFlow is actively soliciting new investors based on the value of the Collateral, which CliniFlow does not own. CliniFlow's private placement memoranda make no reference to Wesley Holdings' lien on 3si Systems' assets, and upon information and belief none of the potential CliniFlow investors who received the memoranda were told about Wesley Holdings' lien. (Shaut Decl. ¶ 14.) Copies of CliniFlow private placement memoranda dated June 2016 and September 2016 are attached to the Shaut Decl. as Exhibit 3.

CliniFlow's private placement memoranda refer to 3si Systems as a "business unit" of CliniFlow. The private placement memoranda project that more than 75% of CliniFlow's projected revenue over the next five years will come from 3si Systems. Nowhere are Wesley Holdings' lien, or the ownership claims of the plaintiffs in the Fraud Litigation, mentioned in the memoranda. Wagner has told potential CliniFlow investors that he already has agreements lined up with hospitals and governmental entities who want to use CliniFlow's products—agreements that, if they exist, should be made for the benefit of 3si Systems as the entity with the exclusive right to license the Collateral. (Shaut Decl. ¶ 15.)

CliniFlow is hiring new officers and employees to pursue service contracts that rely on the use of the Collateral. In addition, Wagner has directed some 3si Systems officers and employees to execute new employment agreements with CliniFlow. (Shaut Decl. ¶ 16.)

CliniFlow also recently obtained approval for $3.6 million dollars in Connecticut bond debt. The Connecticut State Bond Commission approved the bond debt on February 1, 2017. This new bond debt was apparently obtained in violation of this Court's November 17, 2016 preliminary injunction in the Fraud Litigation and will fraudulently interpose a prior layer of lender liens on 3si Systems assets that serve as Wesley Holdings' Collateral, causing harm to Wesley, the State of Connecticut and other creditors. (See Fraud Litigation, Dkt. No. 124.)

Wagner recently attempted to transfer 3si Systems prototype equipment to CliniFlow in violation of the preliminary injunction issued in the Fraud Litigation. Three months ago, Wagner demanded that a 3si Systems employee, Michael Grumbine, transfer valuable 3si Systems prototype equipment to Wagner, and Wagner threatened to sue Mr. Grumbine if Mr. Grumbine did not turn over the equipment. To date, Mr. Grumbine has not turned over the equipment. Upon information and belief, Wagner is planning to use 3si Systems' prototype equipment to

generate contracts with third-party medical service providers for the benefit of CliniFlow, when the equipment and any related contracts should be used for the exclusive benefit of 3si Systems. (Shaut Decl. ¶ 17.)

The effect of Wagner's transfer of 3si Systems and its assets to CliniFlow is that crucial assets subject to Wesley Holdings' lien and the claims of the plaintiffs in the Fraud Litigation have been transferred away from them and made available to other potential lienholders, owners and claimants. (Shaut Decl. ¶ 18.)

Finally, in addition to actively dissipating 3si Systems' assets for his own benefit, Wagner is diminishing the value of 3si Systems' assets by failing to timely pursue patents for additional uses of 3si Systems' patented technology. Significant potential value will be lost if 3si Systems does not pursue these additional patents. (Shaut Decl. ¶ 19.)

**E.     As a Result of Wagner's Fraudulent Conduct and 3si Systems' Breach of the Loan Documents, Wesley Holdings Is Entitled to Enforce Its First Priority Lien and Security Interest in the Collateral.**

As a result of the fraudulent misrepresentations and misconduct described above, 3si Systems is in default under the terms and conditions of the Loan Documents. (Wesley Decl. ¶¶ 8-10.)

3si Systems is in default of Section 4(e) of the Note (the "**Note Default**") for failing to observe and perform the obligations to be observed or performed under the Loan Documents. (Wesley Decl. ¶ 8.)

3si Systems is in breach of at least the following representations and warranties it made in the Loan Agreement:

   a)     3si Systems did not accurately disclose threatened or pending legal proceedings that might materially impair 3si Systems' ability to do business (Section 2(f));

b) 3si Systems provided Wesley Holdings with fraudulent financial statements that did not fairly present in all material respects the financial conditions of 3si Systems and affiliates (Section 2(g));

c) 3si Systems did not accurately disclose its liabilities (Section 2(h));

d) 3i Systems did not accurately disclose all events and developments that could reasonably be expected to have a material adverse effect on 3si Systems or Wesley Holdings, including failing to disclose that Wagner had formed new entities Hannover Square Capital Partners, LP and CliniFlow Technologies, LLC and was planning to transfer 3si Systems and the Collateral to CliniFlow (Section 2(i)); and

e) 3si Systems did not accurately disclose all related party transactions (Section 2(m)).

3si Systems is also in breach of Section 5 of the Loan Agreement for willfully avoiding or seeking to avoid the observance of any performance of any of the terms of the Note or related Loan Documents and failing in good faith to take such action as may be necessary to protect the rights of Wesley Holdings against wrongful impairment. Each of these defaults under the Loan Agreement (the "**Loan Agreement Defaults**") triggers the cross-default provisions of Section 4(e) of the Note. (Wesley Decl. ¶ 9.)

3si Systems is in default of the Security Agreement under at least the following default provisions:

a) 3si Systems defaulted on the performance of the terms, covenants and conditions of the Security Agreement (Section 3(b));

b) 3si Systems failed to remove or adequately bond multiple charging liens or charges upon the Collateral, including the attachment proceedings pending in the Fraud Litigation and the charging lien pending in the litigation brought by former employee Ken Stephens in Texas and Massachusetts (Sections 3(c) and (d)); and

c) 3si Systems made certifications, representations and warranties in the Loan Documents that were untrue or misleading in material respects when made, including misrepresenting the intended use of the Loan proceeds and failing to disclose that Wagner had formed new entities Hannover Square Capital Partners, LP and CliniFlow Technologies, LLC and was planning to transfer 3si Systems and the Collateral to CliniFlow (Section 3(f)).

3si Systems is also in default of Section 2.3 of the Security Agreement for failing to keep accurate and complete books and records of the Collateral.  Each of these defaults under the Security Agreement (the "**Security Agreement Defaults**," and together with the Note Default and the Loan Agreement Defaults, the "**Designated Defaults**") triggers the cross-default provisions of Section 4(e) of the Note.  (Wesley Decl. ¶ 10.)

The Designated Defaults are not curable.  Nevertheless, Wesley Holdings sent 3si Systems a notice of default on May 3, 2017.  (Wesley Decl. ¶ 11.)  A copy of the notice of default letter is attached to the Wesley Declaration as <u>Exhibit 5</u>.

As a result of 3si Systems' defaults, Wesley Holdings is entitled to recover its collection costs and attorneys' fees under at least Section 4(a) of the Loan Agreement.  (Wesley Decl. ¶ 12.)

As a result of the Designated Defaults, 3si Systems owes Wesley Holdings at least $1,448,482.78 as of May 3, 2017, inclusive of outstanding principal, accrued but unpaid interest, fees and collection costs and attorneys' fees, plus interest accruing from and after such date at the interest rate of 14% per annum, plus collection costs and attorneys' fees accruing from and after such date.  (Wesley Decl. ¶ 13.)

As a result of the Designated Defaults, and to collect the debt owed by 3si Systems under the Loan, Wesley Holdings is entitled to exercise its rights under the Loan Documents, including foreclosing upon and taking possession of the Collateral.

**F.**     **The Court Should Appoint a Receiver to Recover the 3si Systems Assets Transferred to CliniFlow, Preserve the Value of 3si Systems' Collateral Assets, and Stop Wagner from Using His Corporate Shell Entities to Perpetuate a Fraud.**

Wagner induced Wesley Holdings to make a loan to 3si Systems based on fraudulent financial data and misrepresentations, moved 3si Systems and its assets to his newly-formed CliniFlow entity and is using the Collateral to benefit CliniFlow instead of 3si Systems. Wagner

is also incurring significant bond debt and demanded that Mr. Grumbine transfer 3si Systems assets in direct violation of the preliminary injunction issued in the Fraud Litigation by this Court.

Wesley Holdings is not the only creditor being defrauded by Wagner. Wagner has been using his shifting corporate shell game to defraud a number of creditors, investors and employees of 3si Systems and its affiliates in a Ponzi-like fraud scheme. Wagner's ongoing fraudulent conduct is detailed in a number of lawsuits currently pending against Wagner all over the country, including the Fraud Litigation pending in this Court. *See also, e.g., Fries v. Downing Investment Partners, LP, et al.*, Philadelphia County Court of Common Pleas (Pennsylvania), Case No. 160702314; *Childress v. Surgical Safety Solutions, LLC*, District Court for the Northern District of Georgia, Case No. 15-cv-3179; *Haufler v. Downing Partners, LLC*, Middlesex County Superior Court (Massachusetts), Case No. 1681 CV 03302); *Pila v. Wagner, et al.*, District Court for the Southern District of New York, Case No. 16-cv-09411; and *Oasis Outsourcing, Inc. v. Downing Digital Healthcare Group, LLC, et al.*, Palm Beach County Fifteenth District Circuit Court (Florida), Case No. 50-2016-CA-000609.

In essence, Wagner's fraud scheme works as follows: Wagner recruited employee-investors for 3si Systems based on representations that employees would be paid certain salary, commission, bonus, expenses and health benefits in exchange for selling products developed by 3si Systems. While recruiting, Wagner represented that 3si Systems' products were fully-developed and ready to sell. As a condition to employment, each employee was required to invest a minimum of $250,000 in 3si Systems. However, 3si Systems could not pay its employees and knew it could not pay its employees when it recruited those employees and solicited their investments. Wagner used the investments from new employee-investors to pay

old employee-investors and stopped paying new employee-investors their promised salary and benefits shortly after they started working for 3si Systems. After making their investments, employees learned that, contrary to Wagner's representations, 3si Systems did not have commercialized products they could sell to earn commissions. (*See, e.g.*, Fraud Litigation, Dkt. Nos. 102, 105 & 106.)

Defrauded investors in other cases have also alleged that Wagner (i) used 3si Systems funds to pay his personal expenses, (ii) caused 3si Systems to pay him approximately $60,000 per month in management or other fees, (iii) caused 3si Systems to pay him $792,042 in compensation in 2014, even though 3si Systems reported a $5.2 million loss that year, (iv) orchestrated $481,000 in related party loans between Wagner-controlled 3si Systems affiliates, and (v) transferred 3si Systems funds to his wife, who is not employed by or invested in 3si Systems. (*See, e.g.*, Fraud Litigation, Dkt. Nos. 102, 105 & 106.)

Wagner's most recent behavior comports with his historical practice of moving assets between different Wagner-controlled entities to solicit new investments while avoiding prior creditor claims and using 3si Systems' assets for the benefit of those new entities to the detriment of 3si Systems. Wesley Holdings needs a receiver to stop the corporate shell game and preserve the Collateral for the benefit of Wesley Holdings and 3si Systems' other creditors.

## II. LAW AND ARGUMENT

### A. Standard for the Appointment of a Receiver.

Rule 66 of the Federal Rules of Civil Procedure authorizes the appointment of a receiver in federal cases. Fed. R. Civ. P. 66 ("These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued."). The standard for appointing a receiver in a federal diversity action is governed by federal law. *U.S. Bank Nat'l Ass'n v. Nesbitt Bellvue Property LLC*, 866 F. Supp. 2d 247, 255 (S.D.N.Y. 2012).

Appointing a receiver is appropriate when it is necessary to protect a plaintiff's interest in the property at issue. *Id.* Factors a court considers when deciding whether to appoint a receiver include:

> Fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Id.* (internal citation omitted).

The appointment of a receiver to secure the collateral of a secured creditor in a foreclosure action is a classic example of the appropriate use of a receiver. *U.S. Bank*, 866 F. Supp. 2d at 255, 257 (describing foreclosure actions as the "classic example" of a case in which the appointment of a receiver is appropriate and stating "[t]he Court's equitable power to appoint a receiver extends to situations where a plaintiff who is a secured creditor seeks the appointment of a receiver to avoid a substantial and preventable decline in the value of its collateral…").

**B.     The Court Should Appoint a Receiver Over the Assets of 3si Systems and Its Affiliates to Protect and Preserve the Collateral and Stop Wagner From Further Dissipating 3si Systems' Assets.**

The factors weigh in favor of this Court appointing a receiver in this case to stop Wagner's dissipation of 3si Systems' assets and preserve those assets for Wesley Holdings and 3si Systems' other defrauded creditors.

### 1.     <u>Fraudulent Conduct.</u>

Wagner has been, and continues to be, engaged in fraudulent conduct. Wagner and 3si Systems fraudulently induced Wesley Holdings to make the Loan based on fraudulent financials and misrepresentations submitted to Wesley Holdings while it was performing its due diligence for the Loan. (Shaut Decl. ¶¶ 4-6, 8-9; Wesley Decl. ¶¶ 2, 9-10.) In addition, Wagner has been

using 3si Systems and its affiliates to perpetuate a Ponzi-like fraud scheme on investors. As described above, Wagner recruited employee-investors for 3si Systems based on representations that employees would be paid certain salary, commissions and other benefits and required each employee to invest a minimum of $250,000 as a condition of employment. However, because 3si Systems had no cash flow, 3si Systems could not pay its employees and knew it could not pay its employees when it recruited those employees and solicited their investments. Wagner used the investments from new employee-investors to pay old employee-investors and stopped paying new employee-investors their promised salary and benefits shortly after they started working for 3si Systems. (*See, e.g.*, Fraud Litigation, Dkt. Nos. 102, 105 & 106.)

Having transferred 3si Systems' assets to CliniFlow to hide from the liabilities owed to prior employee-investors, Wagner is now perpetuating a similar Ponzi-like fraud through CliniFlow. (Shaut Decl. ¶¶ 10-18.)

2. **Imminent Danger Assets Will Be Squandered and Other Legal Remedies Are Inadequate.**

There is an imminent danger that the assets of 3si Systems will be lost, concealed, injured, diminished in value, or squandered if the Court does not appoint a receiver. Wagner has been siphoning, and continues to siphon, assets from 3si Systems for his own benefit. Wagner has transferred 3si Systems and its assets to CliniFlow, and Wagner is actively soliciting new investments in CliniFlow for the alleged purpose of developing and commercializing the assets siphoned from 3si Systems. Wagner is pursuing service agreements between CliniFlow and various hospitals and governmental entities who want to use the 3si Systems products transferred to CliniFlow—agreements that, if they exist, should be made for the benefit of 3si Systems as the entity with the exclusive right to license the Collateral. Wagner is causing CliniFlow to incur millions of dollars in new bond debt that will interpose a new layer of liens between Wesley

Holdings and the Collateral. Wagner also recently attempted to transfer prototype equipment that belongs to 3si Systems to CliniFlow in violation of the preliminary injunction issued in the Fraud Litigation. (Shaut Decl. ¶¶ 10-18.)

In addition to actively dissipating 3si Systems' assets for his own benefit, Wagner is diminishing the value of 3si Systems' assets by failing to adequately protect existing patents and timely pursue patents for additional uses of 3si Systems' patented technology. 3si Systems lacks the funding to expand the patented uses of its valuable technology because Wagner has dissipated investment funds to pay prior defrauded investors and to enrich himself. Proper development and support of 3si Systems' patents is essential for 3si Systems' business and the service contracts generated from the commercialization of those patents are the only way Wesley Holdings and other 3si Systems creditors will be repaid. (Shaut Decl. ¶¶ 3, 18-19.) Significant potential value will be lost if 3si Systems does not timely pursue and develop additional uses for these patents.

### 3. **The Potential Harm to Wesley Holdings Far Outweighs Any Potential Harm to Defendants.**

The harm to Wesley Holdings if a receiver is not appointed far outweighs any potential injury to the Defendants. If Wagner continues to dissipate 3si Systems' assets for himself, transfer the assets of 3si Systems to new entities as part of a corporate shell game, and solicit investments and contractual relationships for new Wagner-controlled entities that should inure to the benefit of 3si Systems, there will be substantially diminished or no Collateral left to repay the defaulted Loan. On the other hand, if a receiver is appointed, the receiver can stop the dissipation of 3si Systems' assets and stop Wagner from using 3si Systems and its affiliates to defraud future investors. Appointing a receiver preserves corporate assets for the benefit of 3si Systems and its creditors.

### 4. High Probability of Success on the Merits.

Finally, Wesley Holdings has a high probability of success in this action. Wesley Holdings made a Loan to 3si Systems secured by a valid, perfected first priority lien on substantially all of the assets of 3si Systems. 3si Systems is in default of its Loan and owes Wesley Holdings in excess of $1.4 million. (Wesley Decl. ¶ 13.) As a result of the Loan defaults, Wesley Holdings is entitled to enforce its contractual and legal remedies, including the remedies available to Wesley Holdings under the Loan Documents and the Uniform Commercial Code, and foreclose on the assets of 3si Systems. The fraudulent behavior by Wagner and 3si Systems described herein and in the Complaint of Wesley Holdings provides a further basis for ruling in Wesley Holdings' favor.

For all of the reasons described above, a receiver needs to be appointed to stop the further dissipation 3si Systems' assets, recover 3si Systems assets already transferred to Wagner, CliniFlow or other Wagner-controlled entities, and ensure that the value of 3si Systems' assets is maximized for the benefit of 3si Systems' numerous defrauded creditors.

### C. The Proposed Receiver.

Wesley Holdings respectfully requests that William A. Brandt, Jr. of Development Specialists, Inc. ("**DSI**") be appointed as receiver in this case. Wesley Holdings has consulted with other creditors of 3si Systems, including the plaintiffs in the Fraud Litigation, and those creditors have indicated that they support the appointment of a receiver over the assets of 3si Systems.

Mr. Brandt is an experienced, nationally-recognized, well-respected management and restructuring professional. Mr. Brandt's biography and a summary of his experience are attached to the Declaration of Keith R. Murphy as Exhibit 1.

Mr. Brandt and DSI have served as a receiver or restructuring professional in dozens of complex receivership and restructuring matters, including engagements involving complex intellectual property and technology issues and engagements requiring complex forensic investigation.

Mr. Brandt and DSI have advised that they have no conflict of interest precluding their appointment in this case. Mr. Brandt and other DSI professionals engaged on this matter have agreed to charge the following hourly rates for their services:

<u>Proposed Senior Advisory Team</u>:
- William A. Brandt, Jr.          $725/hr.
- Patrick J. O'Malley            $615/hr.
- Yale S. Bogen                  $475/hr.
- George E. Shoup III           $400/hr.

<u>Other Professionals (if necessary)</u>:
- Senior Managing Directors     $580-725/hr.
- Directors/Managing Directors   $315-475//hr.
- Associates                        $195-295/hr.

Wesley Holdings is prepared to assure payment of the costs of the receivership from the proceeds of the Collateral or loans made by it pursuant to appropriate orders of this Court.

## CONCLUSION

For the foregoing reasons, Plaintiff Wesley Holdings Ltd. respectfully requests that the Court grant the within Motion and appoint William A. Brandt, Jr. of Development Specialists Inc. as receiver to take possession of the Collateral, to manage and operate the Collateral, to assist as needed in the ultimate sale and disposition of the Collateral, and to take such other related actions as are necessary to protect and preserve the Collateral. Wesley Holdings has included a proposed order for the Court's convenience and consideration.

Date: May 9, 2017
New York, New York

By: s/*Keith R. Murphy*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Samuel M. Light
Email: slight@bakerlaw.com

*Of Counsel:*

BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Michael A. VanNiel
Email: mvanniel@bakerlaw.com
Alexis C. Beachdell
Email: abeachdell@bakerlaw.com
*Attorneys for Wesley Holdings Ltd.*

BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Matthew R. Goldman
Email: mgoldman@bakerlaw.com

*Attorneys for Wesley Holdings Ltd.*