USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 5, 2017

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WESLEY HOLDINGS LTD.,

              Plaintiff,

v.

3SI SYSTEMS, LLC, SURGICAL SAFETY
SOLUTIONS, LLC, DOWNING HEALTH
TECHNOLOGIES, LLC, DOWNING
INVESTMENT PARTNERS, LP, DOWNING
PARTNERS, LLC, HANOVER SQUARE
CAPITAL PARTNERS, LP, CLINIFLOW
TECHNOLOGIES, LLC, AND DAVID W.
WAGNER,

              Defendants.

Case No. 1:17-cv-3362-KPF

**ORDER GRANTING MOTION FOR THE APPOINTMENT OF A RECEIVER**

This matter came before the Court on Plaintiff Wesley Holdings Ltd.'s ("**Wesley Holdings**") motion (the "**Motion**")[1] for the appointment of a receiver over all of the assets of defendant 3si Systems, LLC ("**3si Systems**"), including without limitation all of the intellectual property, patents, intangible assets, contract rights, hardware and software for the operation of hospital operating room voice command systems.  The Court having reviewed the Motion, the Defendants' response to the Motion and Wesley Holdings' reply in support of the Motion; having heard the statements of counsel in support of the relief requested therein at conferences held by the Court on May 25, 2017 and July 28, 2017; having found and concluded that the legal and factual bases set forth in the briefing and at the conferences held by the Court establish just cause for the relief granted herein; having granted the motion by oral ruling at the July 28, 2017 conference and written Order, dated July 31, 2017; and having determined that granting the relief

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

requested in the Motion is warranted and appropriate under Civil Rule 66, the Court finds the Motion well-taken.

**WHEREAS**, Wesley Holdings filed its Complaint on May 5, 2017 seeking foreclosure and other relief stemming from the defaults of 3si Systems under the Note and Loan Documents and other alleged misconduct by the Defendants; and

**WHEREAS**, to secure the Note, on or about May 13, 2016, 3si Systems executed and delivered to Wesley Holdings the Security Agreement, which granted Wesley Holdings a first-priority, senior secured interest and lien on the assets of 3si Systems, including but not limited to the assets listed in the attached Exhibit 1 (the "**Collateral**"), as more fully set forth in the Security Agreement; and

**WHEREAS**, Wesley Holdings perfected its security interest in the Collateral by filing the Financing Statement with the Delaware Secretary of State, and thus has a legally protectable interest in the Collateral; and

**WHEREAS**, 3si Systems is in default of the Note and Security Agreement and, as a result, Wesley Holdings is entitled to enforce its rights and remedies available under the Note and Security Agreement and by law; and

**WHEREAS**, Wesley Holdings filed the Motion seeking the appointment of William A. Brandt, Jr. of Development Specialists, Inc. as receiver to take possession of, recover, control, protect, market and sell the Collateral for the benefit of Wesley Holdings and other creditors; and

**WHEREAS**, this Court is satisfied that Wesley Holdings has shown, by clear and convincing evidence as articulated in the Motion, in the reply in support of the Motion and at the conferences held by the Court, that (i) probable cause exists to believe that Wesley Holdings has

a legally protectable interest in the Collateral, and (ii) that some or all of the Collateral may be lost, removed, dissipated or materially injured if a receiver is not appointed; and

WHEREAS, for the foregoing reasons, and for the reasons more fully stated in the Court's oral ruling at the July 28 2017 conference, which reasons constitute the Court's additional findings of fact and conclusions of law incorporated herein by reference, legal cause exists under Civil Rule 66 for the appointment of a receiver to take possession of the Collateral, manage, control, recover and protect the Collateral, prepare the Collateral for sale, and sell the Collateral.

NOW, THEREFORE, IT IS HEREBY ORDERED, THAT:

1.      The Motion is GRANTED in its entirety.

2.      **Appointment.** The Court hereby appoints William A. Brandt, Jr. of Development Specialists, Inc. (the "**Receiver**") to serve as receiver of 3si Systems and the Collateral.  Such appointment shall become effective immediately upon the Effective Date (as that term is defined herein), and the Receiver shall be deemed to have taken possession of the Collateral upon the Effective Date.  The Receiver is qualified to act as Receiver in this case and shall have primary responsibility for this receivership.  The Receiver shall have sole authority over the Collateral and is hereby vested with all necessary authority to take such corporate actions on behalf of 3si Systems with respect to the Collateral, as the Receiver deems necessary or appropriate in accordance with this Order and the Receiver's business judgment.

3.      **No Bond.**  The Receiver's appointment shall not be conditioned upon the posting of bond or other security.

4.      **Authority of the Receiver.**  At this time, the Receiver's sole responsibility is to gather, recover, market and sell the Collateral in a professional manner as expeditiously as

possible. Accordingly, the Court hereby authorizes the Receiver, as of the Effective Date, to do any act authorized under Civil Rule 66 or by law that is necessary to facilitate the Receiver's responsibilities, including all of the following acts:

    a. To immediately take and have complete and exclusive possession, control and custody of the Collateral, including, but not limited to, all intellectual property, patents, hardware, software, licenses, equity interests, contract rights, investment property, general intangibles, accounts, accounts receivable, equipment, inventory, documents, books and records, chattel paper, earnings, issues, income, profits, proceeds, proceeds from insurance, rents and other revenues associated with said Collateral, now due and unpaid or hereafter becoming due and payable or hereafter acquired by 3si Systems, of whatever nature and wherever located or in which 3si Systems asserts or may assert an interest (collectively, the "**Proceeds**"). The Proceeds and Collateral are hereby placed in *custodia legis* and are subject to the exclusive jurisdiction of this Court. The Receiver shall also have and exercise all rights of 3si Systems to occupy and control the portion of any real property leased or currently occupied by 3si Systems (the "**Facility**"), to the extent the Receiver deems it necessary or appropriate to facilitate a prompt sale of the Collateral. The Receiver is hereby authorized, with landlord approval, to change locks and secure the Collateral, as the Receiver deems necessary or appropriate under the circumstances.

    b. To take all necessary steps to gather, recover, conserve, protect, market and sell the Collateral, including, without limitation, filing or pursue any patents, patent expansions or patent-related protections related to the Collateral, appearing in legal proceedings involving the Collateral, facilitating any beta testing of the Collateral, taking all prudent steps to collect all accounts receivable owed to 3si Systems by all third parties, taking whatever action is necessary to prepare, advertise or appraise the value of the Collateral for sale and to preserve and maximize the value of the Collateral, subject to and consistent with the terms and conditions hereof, and effectuating a transfer, assignment, or sale of the Collateral, or any part thereof, free and clear of liens, to a third-party purchaser or secured creditor that submits a credit bid for the Collateral (wherever located) by public or private sale, in either event on notice to all parties in this matter and with an opportunity for them to be heard. The terms of any Sale of the Collateral shall be subject to further order of the Court. Wesley Holdings and the Receiver contemplate that a sale of the Collateral will take place within six (6) months of the Effective Date; provided, however, that nothing in this Order requires the Receiver to sell the Collateral within six (6) months of the Effective Date.

    c. To borrow from Wesley Holdings, on a senior secured basis, any funds ("**Funds**") necessary to assist the Receiver in the discharge of his duties and/or to preserve and maintain the Collateral; provided, however, that any borrowing of Funds shall be subject to and in accordance with Paragraph 5 of this Order. Any Funds

4

advanced by Wesley Holdings shall be and are secured by a first priority security interest — senior in priority to any and all existing claims, whether secured or unsecured, in the Collateral — provided, however, that such security interest shall be subject to the Fee Carve-Out (as defined in Paragraph 6 below).  Further, any Funds advanced by Wesley Holdings shall be held in a separate bank account and shall not be commingled with any existing funds held by 3si Systems in connection with the Collateral.  Wesley Holdings is not required to file any additional financing statements or other documents or take any action to validate or perfect such security interest.

d.  To utilize the service of any persons or entities necessary for the Receiver to carry out his receivership duties and to pay such persons or entities for such services, so long as such persons or entities are approved by Wesley Holdings and such expenses are in accordance with the terms of the Budget attached as Exhibit 2.

e.  To collect all profits and Proceeds generated from the Collateral.  The Receiver may use the Proceeds to pay reasonable and necessary expenses and expenditures related to the receivership and the preservation and maintenance of the Collateral for the benefit of 3si Systems' creditors, so long as such expenses are in accordance with the Budget attached as Exhibit 2.  Expenses that are not authorized by the Budget shall not be paid unless (i) Wesley Holdings consents to payment of such expenses, and (ii) such expenses are approved by Order of the Court after notice and a hearing.

f.  To maintain detailed records, supplied to the Court and to Wesley Holdings upon reasonable request, including an itemized accounting of any funds received by or on behalf of the Receiver and any disbursements made by or on behalf of the Receiver (including the Receiver's fees), and to file such reports of receipts and disbursements as required under this Order.

g.  To take inventory of all Collateral and/or Proceeds, wherever located, and to conduct a reasonable search for all person(s) or entities with a security interest or other interest, or who claim to have such an interest, in the Collateral and/or Proceeds.

h.  To use and retain 3si Systems' existing bank accounts, investment accounts, safe deposit boxes, statutory accounts, petty cash or other accounts of any nature whatsoever (collectively the "**Accounts**"), with signing authority transferred to the Receiver and/or his delegates, and no other signatory retained.  The Receiver is further authorized to open and maintain bank accounts to be used exclusively for the receivership estate and to direct payors, including but not limited to any parties to any services agreement involving the Collateral, to deposit funds due and owing to 3si Systems in such accounts as directed by the Receiver, and to supply Wesley Holdings with the identity of such bank accounts, along with copies of all monthly statements of account received by the Receiver as to such accounts.  Any bank, savings and loan association, depository, financial institution, or other entity, wherever located (collectively, the "**Banks**"), are

authorized and directed to continue to service and administer, without interruption, the Accounts as accounts under the control and supervision of the Receiver, and in their usual and ordinary course, receive, process, and pay any and all checks, drafts, wires, or automated clearing house transfers drawn on the accounts after the appointment of the Receiver.  Subsequent to the entry of this Order, the Banks at which the Accounts are maintained are prohibited from offsetting, freezing or otherwise impeding the use or transfer of, or access to, any funds deposited by 3si Systems into the Accounts before or after the appointment of the Receiver without first obtaining either the prior written consent of the Receiver or an order of this Court allowing such action.  The Receiver may use 3si Systems' business forms in accordance with his duties under this Order.

i.    To perform under any existing contracts of 3si Systems related to the Collateral, or to terminate such existing contracts of 3si Systems related to the Collateral, where the Receiver determines in his reasonable business judgment that such performance will not act to preserve or maximize the value of the Collateral.

j.    To maintain or purchase appropriate insurance for the Collateral from any agent or carrier, of any type reasonably necessary, and to pay any premiums for additional insurance coverage for the Receiver (including, without limitation, an errors and omissions policy and an umbrella policy) in connection with the Collateral, provided, however, that the Receiver deems, in his reasonable business judgment, the existing insurance for the Collateral to be insufficient or nonexistent.

k.    To take possession of or, if needed, to recover all mail or packages addressed to 3si Systems related to the Collateral.  The United States Postal Service and equivalent private delivery services (e.g. United Parcel Service) are directed to release all such mail and packages related to the Collateral to the Receiver or a designee of the Receiver.

l.    To immediately retain and employ professional persons who, in the Receiver's judgment, are necessary to advise and assist the Receiver, commencing upon the entry of this Order (the "**Professionals**").  Such professional persons, whose retention is hereby authorized, include Development Specialists, Inc. and Rosen & Associates, P.C., to assist the Receiver with the execution of his duties as Receiver in this matter and to perform other duties as required, pursuant to the Budget set forth on the attached Exhibit 2.  In addition, the Receiver is authorized to compensate such Professionals subject to the procedures and limitations set forth in Paragraphs 4(f)(iii), 5, 6 and 7 of this Order.  No further order of the Court is required approving the retention of the Professionals on the list above. The Receiver may retain Professionals not identified on the list above upon appropriate motion to the Court.

m.   To pay and disburse to the Receiver a fee for the Receiver's services and reimbursement for any reasonable and necessary disbursements the Receiver

incurs on behalf of the estate, in accordance with the procedures and limitations set forth in Paragraphs 4(f), 5, 6 and 7 of this Order.

If, after the Collateral is sold, there are assets left in the receivership estate after repaying in full the costs of the receivership and the senior secured loan owed to Wesley Holdings, the Receiver may be asked by the parties or the Court to provide additional receivership services (the "**Additional Services**"), subject to a further Court order providing for such services and approval of a new or revised Budget for such Additional Services.

The Receiver will report back to the Court within 45 days of his appointment with respect to the status of his undertakings and investigations.  Nothing in this Order will preclude the Receiver from seeking other or further relief from the Court as a result of circumstances determined by the Receiver in his engagement.

5.      **Budget and Benchmarks**.  The Receiver is directed to handle this matter as cost-effectively as possible, consistent with the Receiver's duties herein and reasonably prudent business judgment, and shall delegate duties and conserve resources to the extent it is reasonable to do so.   To that end, the Receiver and his Professionals are subject to the budget (the "**Budget**") and associated benchmarks (the "**Benchmarks**") attached hereto as Exhibit 2.  Any obligation of Wesley Holdings to advance funds to pay the expenses authorized by the Budget shall be subject to the Receiver satisfying the Benchmarks.  If the Benchmarks are not satisfied, Wesley Holdings shall have no obligation to continue advancing funds to pay the costs of the receivership, but, in its sole discretion, may continue to fund the receivership without waiving any right to stop funding the receivership in the future.

If the Receiver believes that he is likely to, or has, exceeded the Budget or that the timeline for the Benchmarks needs to be extended, the Receiver shall notify Wesley Holdings and shall promptly provide an explanation for the Budget overages or reason for extending the

Benchmarks, and shall provide a new or revised proposed budget and/or benchmarks.  If Wesley Holdings consents to the proposed modification of the Budget and/or Benchmarks, the Receiver shall file the revised Budget and/or Benchmarks with the Court.  The parties shall have seven (7) days to submit any objections, responses, or other comments to any new or revised budgets or benchmarks submitted pursuant to this Paragraph.  Any new or revised budgets or benchmarks submitted pursuant to this Paragraph must be approved by Order of the Court.

If Wesley Holdings does not consent to the proposed modification of the Budget and/or Benchmarks, Wesley Holdings shall have no obligation to continue advancing funds to pay the costs of the receivership.  If Wesley Holdings ceases advancing funds to pay the costs of the receivership, the Receiver and any Professional retained by the Receiver may, at their sole discretion, either (i) resign from their duties under this Order by filing a notice of resignation with the Court, which filing shall immediately terminate any and all of Receiver's obligations under this Order, or (ii) continue performing its duties as a Receiver and/or Professional.

If the Receiver is asked to provide Additional Services in accordance with Paragraph 4, the Receiver shall have no obligation to provide such Additional Services absent (i) a new or revised Budget approved by Order of the Court and (ii) adequate assurance of payment for providing the Additional Services, as determined in the Receiver's sole discretion.  Wesley Holdings has no obligation to continue advancing funds to pay the costs for any Additional Services.

6.      **Carve-Out for Fees.** Wesley Holdings' liens and security interests in the Collateral and/or Proceeds, and any other liens or interests in the Collateral and/or Proceeds, shall be and are subject and subordinate in all respects to the compensation for services rendered or reimbursement of expenses incurred by the Receiver and the Professionals that are (i) within

the Budget, and (ii) approved and allowed by the Court after notice and, if necessary, a hearing (the "**Fee Carve-Out**").

       7.      **Payment of Fees and Expenses**.  The Receiver and Professionals retained by the Receiver shall receive compensation for the services rendered pursuant to the Receiver's duties as specified in this Order, pursuant to the Budget attached to this Order as <u>Exhibit 2</u>.  The Receiver and Professionals retained by the Receiver shall further receive reimbursement of expenses and disbursements incurred in connection with the performance of their duties.

       The Receiver and the Professionals shall file a notice of invoice, attaching a copy of the Receiver and Professionals' invoice at issue (each, an "**Invoice**"), on a monthly basis for all fees billed and out-of-pocket expenses incurred during the prior month.  Parties shall have fourteen (14) days from the date such notice of invoice is filed to file an objection to the Invoice.  If no objection is filed, the Receiver and the Professionals are entitled to receive payment of 75% of the fees and 100% of the out-of-pocket expenses included in the Invoice, on an interim basis.  If a party files a timely objection to an Invoice, the Court may approve the Invoice or set the matter for hearing.

       The Receiver and the Professionals shall file interim and/or final fee applications no less than every three (3) months seeking Court approval for full payment of Invoices, including payment of any unpaid 25% holdback and any other unpaid fees or expenses.  Parties shall have fourteen (14) days from the date such interim fee application is filed to file an objection to the interim fee application.  If no objection is filed, the Court may enter an order approving the interim or final fee application.  If a party-in-interest files a timely objection to an interim or final fee application, the Court may approve the interim or final fee application or set the matter for hearing.

All payments authorized pursuant to this Paragraph shall come first from the assets of the receivership estate and then, if the assets of the receivership estate are insufficient, from advances made by Wesley Holdings.

8.      **Insurance.**  The Receiver shall be named as a primary insured party on existing liability and property damage insurance coverage for the Collateral and, if needed, the Receiver is authorized to pay any and all related premiums.

9.      **Limitations on Receiver's Liability**.  The Receiver, and his employees, agents, attorneys and other professionals retained to assist the Receiver with the performance of his duties, and others engaged in connection herewith, shall not be liable for actions taken, actions not taken, or decisions made in performing the duties of the Receiver under this Order which are based upon the exercise of reasonably prudent business judgment.  The Receiver shall have no responsibility for accounts receivable funds (if any) not transferred to the Receiver, other than to seek recovery of such funds from any entity that purports to or does hold them.  Further, so long as the Receiver acts as authorized herein, the Receiver shall be indemnified and held harmless by the receivership estate from any right, claim, or causes of action brought against the Receiver, including the costs and expenses of defense of such claims or actions.  The Receiver shall not be liable for the obligations of 3si Systems to any third parties (including, without limitation, persons or entities not a party to this litigation) including, without limitation, tax liability (payroll taxes, income taxes, or back taxes of any kind); worker's compensation and unemployment compensation premiums or other obligations; wages, benefits, and other compensation due to employees, officers, directors, or agents; and contract indebtedness to third parties arising prior to his appointment and qualification as the Receiver.

10.     **Injunction of 3si Systems and Other Defendants**.  3si Systems, Surgical Safety Solutions, LLC, Downing Health Technologies, LLC, Downing Investment Partners, LP, Downing Partners, LLC, Hanover Square Capital Partners, LP, CliniFlow Technologies, LLC, and David W. Wagner (collectively, "**Defendants**"), and all creditors, officers, directors, managers, members, attorneys, accountants, agents, employees, affiliates, independent contractors, or any other persons or entities acting in concert or participating with Defendants, and all those who are under Defendants' direction or control, are hereby enjoined and directed (i) to fully and completely cooperate with the Receiver and (ii) forthwith upon entry of this Order, to surrender and deliver to the Receiver:

   a.  Any and all intellectual property, hardware, software, computer source code and passwords, licenses, books, records, contracts, agreements, leases, purchase orders, invoices, checks, checkbooks, bank account statements, ledgers, journals, and other documents of any kind or description, in whatever form they may be maintained (including in any electronic media or paper), related to the Collateral or the Proceeds, that the Receiver may deem necessary (in the Receiver's sole discretion) to fulfill the Receiver's duties and responsibilities pursuant to this Order and applicable law;

   b.  All cash, bank accounts and and equity interests (including any and all bank accounts or equity interests of any kind in the name of 3si Systems or any present or former agent of 3si Systems), plans and specifications, service agreements, investments, solicitation of investments, insurance, accounts payable and receivable and correspondence with current or former employees of or investors in the Collateral, of any kind, relating to the Collateral and its maintenance, use or operation;

   c.  All Proceeds, including all accounts receivable, earnings, issues, profits, rents and other revenues of any kind or description previously, currently, or hereafter derived from or in any manner related to the Collateral; and

   d.  Any and all documents necessary to name the Receiver as a primary insured party on any existing liability and property damage insurance coverage applicable to the Collateral.

The Receiver shall have the right to remove the current owner(s), officers, directors, shareholders, agents, employees, representatives, creditors and any other interested persons from

the direct or indirect management of 3si Systems or the Collateral if they fail to cooperate with the Receiver.

11.     **Injunction of Other Claimants and Creditors**.     All Defendants, creditors, claimants, bodies politic, parties-in-interest, and their respective attorneys, agents, employees, and all other persons, firms, and corporations be, and they hereby are, jointly and severally enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Collateral, the books, records, revenues, profits, and related assets associated with the Collateral, or against the Receiver in any Court.   The parties are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon any of the Collateral or the books, records, revenues, profits and related assets associated with the Collateral, or upon the Receiver, and from doing any act or thing whatsoever to interfere (i) with the Receiver in the discharge of his duties in this proceeding or (ii) with the exclusive jurisdiction of this Court over the Collateral and the books, records, revenues, profits and related assets associated with the Collateral.   **Notwithstanding the provisions of this paragraph, this Order shall <u>not</u> act to stay or enjoin the prosecution or continuation of the action pending in this Court captioned *Hilderbrand, et al. v. Downing Investment Partners, LP, et al.*, Case No. 16-04040; or the following arbitrations currently pending before the American Arbitration Association: *David Hilderbrand v. 3si Systems, LLC, et al.*, Case No. 01-16-0004-7563; *Andrew Hatch, et al. v. Downing Investment Partners, LP, et al.*, Case No. 01-16-0005-6312; and *Chad Decker, et al. v. Downing Investment Partners, LP, et al.*, Case No. 01-17-0001-3167; or the action pending in the New York**

Supreme Court captioned *Russell Wakelin v. 3si Systems, LLC*, Index No. 653003/2017; **provided**, **however**, that no such actions shall interfere with the Receiver's control of the Collateral or the discharge of his duties in this proceeding.

12.    **Payment of Proceeds**.  All parties indebted or otherwise obligated to 3si Systems for any matters related to the Collateral are hereby directed to pay over to the Receiver all Proceeds now due or unpaid or that may hereafter become due related to the Collateral, until further order of this Court.

13.    **Accountings**.  The Receiver shall file a report within sixty (60) days from the Effective Date of this Order detailing all assets collected, money received and money disbursed, and providing an update on the status of the marketing and sale of the Collateral.  Thereafter, the Receiver shall file similar reports with the Clerk of this Court no less than every thirty (30) days.

14.    **Tax Returns**.  The Receiver shall have no responsibility to prepare or file state or federal income tax returns relating to 3si Systems, the receivership or the operation of the Collateral.  The Receiver may choose to file an appropriate tax return if he determines one is necessary in order to open or maintain bank accounts or otherwise to comply with his obligations pursuant to this Order, but the Receiver is under no obligation to file any such tax return.

15.    **No Claims Administration Duties**.  The Receiver has no duty to engage in claim administration-related activities at this time.  If there are assets left in the receivership estate after the Collateral is sold and the receivership costs and Wesley Holdings are repaid in full, the Receiver may be asked to provide Additional Services that may include claim administration-related activities.  Any such Additional Services shall be subject to Paragraphs 4 and 5 of this Order.

Notwithstanding anything written above, the Receiver shall (i) ascertain by commercially reasonable means (including, but not limited to, conducting a standard lien search) those persons or entities who claim a security interest or lien on the Collateral, and (ii) provide such persons with notice of any sale of the Collateral.  Any determination by the Receiver as to the identity or persons or entities claiming a security interest or lien on the Collateral shall be deemed for informational purposes only and shall not be considered an admission of the validity or priority of any claim by any such person or entity against the Collateral.

16.     **No Forensic Investigation Duties**.  The Receiver has no duty to engage in forensic investigation-related activities at this time.  If there are assets left in the receivership estate after the Collateral is sold and the receivership costs and Wesley Holdings are repaid in full, the Receiver may be asked to provide Additional Services that may include forensic investigation-related activities.  Any such Additional Services shall be subject to Paragraphs 4 and 5 of this Order.

17.     **Penalties for Interference**.  Any entity, person or individual who willfully interferes with the authority of the Receiver as set forth in this Order or any subsequent order of this Court shall be subject to all appropriate penalties provided for under the laws of the State of New York and the United States, and any such conduct may be punishable as a contempt of Court.

18.     **Effective Date**.  This Order shall become effective as of August __, 2017 or the date this Order is journalized, whichever comes first.

19.     **No Just Reason for Delay**.  The Court has determined that there is no just reason for delay.

SO ORDERED.

**SO ORDERED** this   5   day of September 2017

_Katherine Polk Failla_

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE

14

# EXHIBIT 1

## 3SI SYSTEMS COLLATERAL

The Collateral subject to the receivership includes, but may not be limited to, all of 3si Systems, LLC's right, title and interest in and to any of the following, whether now or hereafter owned, acquired, arising or existing, whether acquired by contract or operation of law, and wherever located:

1) All equity interests held by 3si Systems, LLC, including but not limited to 3si Systems, LLC's 83% equity interests in Surgical Safety Solutions, LLC.  The assets of Surgical Safety Solutions, LLC include, but are not limited to, all rights to patents and other intellectual property relating to the operation of hospital room voice command systems, and the basic patent source code associated with those patents.

2) All rights under any existing or future contractual agreements between 3si Systems and any other person or entity, including but not limited to:

   - That certain *Distributor Agreement* dated December 23, 2014, by and between Surgical Safety Solutions, LLC and Downing Digital Healthcare Group, LLC n/k/a 3si Systems, LLC, as such agreement may be amended from time to time
   - That certain *License Agreement* dated June 25, 2014, by and between President and Fellows of Harvard College and Surgical Safety Systems, LLC n/k/a 3si Systems, LLC, as such agreement may be amended from time to time
   - Contract rights under any yet-to-be-executed agreements between Duke University and 3si Systems, LLC

3) All equipment or other 3si Systems, LLC assets identified by David Wagner, including but not limited to:[1]

   - Bank account at Citizens Bank, Account No. 2393-796-3 (Providence, Rhode Island)
   - Rubbermaid Medical – no battery (1)
   - Rubbermaid Medical M3800A40HL LCD Cart 40 LiFe PO4 Battery (1)
   - Spiral Cord Extended Length (1)
   - Dual Display Mount for Cart (2)
   - Furman Power Conditioner (2)
   - HP Elite Desk 800 – Intel Core i7 8GB RAM (2)
   - 8 GB RAM (2)
   - Self Encrypting Drive (2)
   - USB washable Keyboard and Mouse (2)
   - VESA Stand (2)
   - 21.5" LED LCD Touch Screen Monitor 1920x1080 (2)
   - 31.5" LED HD Screen (2)
   - Boyton Rack Case DTRK 718 (2)
   - Sanus full motion mount (2)

---

[1] This list is derived from Mr. Jesser's email to counsel for Wesley Holdings dated August 8, 2017.

4) All equipment or other 3si Systems, LLC assets in the possession of Jeff Rice, including but not limited to:[2]

- TASCAM US1800 (1)
- Furman Power Conditioner (1)
- CAD Bodypack (F Band) (2)
- CAD Bodypack (G Band) (2)
- Mic cable – 3ft (4)
- Boyton Rack Case DTRK 718 (2)
- Toshiba eStudio 287CS copier/printer Copy machine (1)
- Former employees' laptop (1)
- Demo Kit – system used to demo product for potential customer (1)

5) All equipment or other 3si Systems, LLC assets in the possession of Michael Grumbine, including but not limited to:[3]

- Rubbermaid Medical M3800A40HL LCD Cart 40 LiFePO4 Battery (2)
- Spiral Cord Extended Length (2)
- Dual Display Mount for Cart (2)
- Personus Audiobox (2)
- Furman Power Conditioner (2)
- CAD Bodypack (F Band) (16)
- CAD Bodypack (G Band) (12)
- Mic Cable – 3ft (23)
- HP Elite Desk 800 – Intel Core i7 8GB RAM (2)
- 8 GB RAM (2)
- Self-Encrypting Drive (2)
- USB washable Keyboard and Mouse (2)
- VESA Stand (2)
- 21.5" LED LCD Touch Screen Monitor 1920x1080 (2)
- 31.5" LED HD Screen (2)
- Vortex mounting systems (4)
- Sanus full motion mount (1)
- Moto 8 (1)
- Former employees' laptop (3)

6) To the extent not already listed above, all of 3si Systems, LLC's right, title and interest in and to any of the following, whether now or hereafter owned, acquired, arising or existing, whether acquired by contract or operation of law, and wherever located:

---

[2] This list is derived from Mr. Rice's letter to the Court dated June 15, 2017 (Case No. 16-cv-04040, ECF No. 142) and Mr. Jesser's email to counsel for Wesley Holdings dated August 8, 2017.
[3] This list is derived from Mr. Grumbine's letter to the Court dated June 15, 2017 (Case No. 16-cv-04040, ECF No. 142) and Mr. Jesser's email to counsel for Wesley Holdings dated August 8, 2017.

- All other goods, ancillaries, and related items, accounts, general intangibles, deposit accounts, document, instruments, commercial tort claims, letters of credit, letters of credit rights, investment property and all other property and assets of 3si Systems
- All additions to, substitutions for, replacements and products of the foregoing
- All cash and non-cash proceeds of or from the foregoing

**EXHIBIT 2**

**Wesley Holdings LTD v. 3si et al**
Projection of 6 Month Administration and Related Cost*
**6 Month Model**

| | | M/E 8/31/2017 | M/E 9/30/2017 | M/E 10/31/2017 | M/E 11/30/2017 | M/E 12/31/2017 | M/E 1/31/2018 | Transaction Fee | TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| **PROJECTED COSTS DURING ADMINISTRATION** | | | | | | | | | | |
| ** | Receiver's Fees | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $62,500.00 | $92,500.00 | |
| | Receiver's Expenses | $0.00 | $0.00 | $0.00 | $0.00 | $2,500.00 | $2,500.00 | $0.00 | $5,000.00 | |
| | Receiver's Counsel Fees | $10,000.00 | $5,000.00 | $1,000.00 | $1,000.00 | $3,000.00 | $3,000.00 | $0.00 | $23,000.00 | |
| | Receiver's Counsel Expenses | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| | IP Counsel Fees | $2,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,000.00 | |
| ** | IP Counsel Expenses | $500.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $500.00 | |
| ** | IT Related and Support Fees and Expenses | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $0.00 | $30,000.00 | |
| ** | Equipment Transport/Storage Expenses | $0.00 | $5,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,000.00 | |
| | **Total Operations Expenses** | **$22,500.00** | **$20,000.00** | **$11,000.00** | **$11,000.00** | **$15,500.00** | **$15,500.00** | **$62,500.00** | **$158,000.00** | $158,000.00 |

**Total Projected 6 Month Funding Needs**                                                                                                   $158,000.00

*          This Projected 6 Month Administration and Related Expense Budget contains projections by the Receiver for planning purposes only - actual fees/expense for Receiver's Counsel and IT are subject to change based upon additional information received

**      The projected Receiver's Fees are on a reduced flat fee per month as opposed to an hourly rate and a 5% Transaction Fee provided Secured Lender credit bids their amount owed by the Debtor - Receiver will track all professional time for administration of the Receivership Estate and provide same upon request.

**      The projected Receiver's Expenses are inserted without knowing what further IT development time may be and what BETA testing time may be - as such, the Receivership has projected potential sale related efforts starting in month 4 and expenses related thereto but such is subject to advancement and/or delay based upon realtime circumstances

        The projected Receiver's Counsel's fees are on a flat fee per month as opposed to an hourly rate - Counsel will track all professional time for legal services to the Receiver

        It is anticipated that Receiver's Counsel's expenses will be paid for by the Receiver thus no expenses are projected

        The projected IP Counsel Fees are based upon discussions regarding that certain amounts remain unpaid to IP counsel regarding completion of certain patent and patent related issues - subject to confirmation

**      The projected IP Counsel Expenses are projections for completion of patent related filing(s) - subject to later confirmation

**      The projected IT Related Support Fees and Expenses are on a flat fee per month as opposed to an hourly rate - Michael Grumbine expected to provide IT related support and services

**      The Equipment Transport/Storage Expenses are projections based upon location of equipment and possible costs of shipping

8/25/2017

*ATTORNEY/CLIENT AND/OR WORK PRODUCT PRIVILEGED
DRAFT*

1